In the Matter of the Application of the CITY OF NEW YORK, Respondent, the Successor of the MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, for the Appointment of Commissioners of Assessment under Chapter 339 of the Laws of 1892, an Act Entitled, etc., as Amended by Chapter 548 of the Laws of 1894, by Chapter 594 of the Laws of 1896, and by Chapter 613 of the Laws of 1898.

FREDERICK W. SANDER, Appellant.

*Appeal—it cannot be taken by one party for another—assessment for the cost of altering the grade of a railroad—until the commissioners decide that some part thereof is to be assessed upon the property of individuals the latter are not entitled to review the validity of the commissioners' appointment—constitutionality of such an assessment.*

A party to a special proceeding has no authority to take an appeal on behalf of others interested in the proceeding.

Chapter 339 of the Laws of 1892, as amended, authorizes the elevation of the New York and Harlem railroad between One Hundred and Sixth street and the Harlem river in the city of New York, and provides that the expense of the improvement shall be borne by the New York and Harlem Railroad Company and its lessee, the New York Central and Hudson River Railroad Company, and the city of New York in equal proportions; that, upon the completion of the work and payment of the city's share of the cost thereof, commissioners of assessment shall be appointed who shall view the improvement, fix the area of assessment, and assess all or part of the expense of the improvement upon the premises included in the area of assessment, or upon the city of New York. The statute does not provide that the property owners shall have notice of the proceedings before the commissioners, but does provide that the owners of property assessed may object to the assessment after the commissioners have made their report and shall be heard by the commissioners upon such objections.

*Held,* that, until the commissioners had determined to assess the cost of the improvement upon specific property, no one was aggrieved by their appointment, and that, consequently, an owner of property situated within the possible area of assessment could not prosecute an appeal from the order appointing them.

*Quære,* whether the Legislature had authority to provide that the expense of raising the grade of the railroad, which was apparently incurred in order to enable the railroad companies to comply with the United States statute requiring them to elevate their bridge across the Harlem river, should be assessed in whole or in part upon the specific property claimed to have been benefited.

APPEAL by Frederick W. Sander, "in his own behalf and in behalf of over 350 other property owners, lessees, parties and persons interested in property in the City of New York within the possible area of assessment herein," from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 8th day of July, 1902, appointing commissioners of assessment.

*James C. Bushby*, for the appellant.

*John P. Dunn*, for the respondent.

INGRAHAM, J.:

The appeal from the order in this proceeding was taken by Frederick W. Sander, owner of the premises, etc., "in his own behalf and in behalf of over 350 other property owners * * * interested in property in the City of New York within the possible area of assessment herein." We treat this as an appeal by Frederick W. Sander individually. We know of no authority by which a party to a special proceeding can appeal on behalf of others interested. In a proceeding of this character each person who appears becomes a party to the proceeding and, being such a party, can appeal only when he is aggrieved by an order made in the proceeding.

As a preliminary objection, the corporation counsel insists that the appellant, as an owner of real property abutting on Park avenue, cannot review an order appointing commissioners to determine whether or not any part of the sum paid by the city of New York for the elevation of the tracks of the New York and Harlem railroad and the New York Central and Hudson River railroad on Park avenue shall be assessed upon real property; and, in the event that any portion of the said sum should be assessed upon any specific real property, to make such assessment. The commissioners were appointed pursuant to the provisions of chapter 339 of the Laws of 1892.

By section 1 of that act it is provided that the grade of the New York and Harlem railroad, between One Hundred and Sixth street and the Harlem river, as now established by chapter 702 of the Laws of 1872, shall be changed and altered by elevating the grade above the surface of the street. Section 2 provides that "the viaduct

structure, as it now exists between One Hundred and Sixth and the south side of One Hundred and Eleventh streets, shall be adapted to the new grade line as established by the preceding section by raising its parapet walls and filling in with earth, or other materials, between the same, to the height required by the new grade; and from the south side of One Hundred and Eleventh street to the Harlem river the railroad tracks and roadbed shall be carried on a viaduct structure of iron or steel." Section 13 of the act provides that "there shall be a board whose duty it shall be to execute, direct and superintend the construction of the said improvement from One Hundred and Sixth street to the line of the Harlem river;" the said board to be appointed by the mayor of the city of New York, and it is authorized and directed to take entire charge and control of the said improvement from One Hundred and Sixth street to the Harlem river, and to execute the same in conformity with the provisions of the act. Section 14 of the act (as amd. by Laws of 1894, chap. 548) provides that when the plans, specifications and estimate shall be made and filed as before provided, "the expense and cost of the said improvement shall be borne and paid by the New York and Harlem Railroad Company or its lessee, the New York Central and Hudson River Railroad Company, and the Mayor, Aldermen and Commonalty of the City of New York, in equal proportions, as the construction of the said improvement progresses. When and as often as it shall appear by the certificate of the superintending engineer of the work of the said improvement duly certified by the aforesaid board that the sum of twenty-five thousand dollars has been expended thereon by either of said railroad companies, specifying the portions and divisions of the said improvement where the said expenditure has been made, the comptroller of the city of New York shall draw his warrant upon the treasury of the said city in favor of the treasurer of the said railroad company bearing and paying said expense for one-half of the said sum, * * * and deliver it to the said railroad company for and on account of the one-half of the expense and cost of the said improvement to be borne and paid by the city as aforesaid." Section 15 provides for the issuing of bonds to provide the money for such payment, and such bonds are to be known as assessment bonds for the Park avenue improvement above One Hundred and Sixth street, and are to be

issued by the comptroller at not less than par and for such period as the comptroller shall determine, not exceeding five years. Section 16 provides that "upon the completion of such work and final payment by the comptroller of the proportion of the cost of said improvement to be borne by the city of New York, the mayor, aldermen and commonalty of the city of New York, by the counsel to the corporation of said city, is hereby authorized and directed to make application to a Special Term of the Supreme Court in and for the first department for the appointment of commissioners of assessment, and the said court shall thereupon name three discreet and disinterested persons, being citizens of the city of New York, as such commissioners of assessment, for the purpose of performing the duties hereinafter mentioned in that behalf prescribed. Twenty days' notice of such applications shall be published in the City Record, and in at least two other newspapers published in the city of New York."

Although notice of this application is required to be given, there is no provision for hearing the owners of real property or other persons, and the section then continues : " It shall be the duty of said commissioners to view the improvement provided for by the terms of this act from One Hundred and Sixth street north to the Harlem river, and all such lands, tenements, hereditaments and premises as they may ultimately include within the area of assessment that may be fixed and determined by them, and shall proceed to determine the area upon which an assessment shall be imposed sufficient to meet and pay the entire amount of the assessment bonds which may be issued in pursuance of the provisions of section fifteen of this act, together with interest on such bonds to the date of the levying of such assessment, or such portion of said bonds and interest as the said commissioners of assessment shall determine should be paid by assessment. It shall and may be lawful to and for the said commissioners of assessment, in their discretion, if they deem it equitable and just so to do, but not otherwise, to assess the whole or any part of the said bonds and interest upon the mayor, aldermen and commonalty of the city of New York. Any area of assessment shall be made so as to include all such lands, tenements, hereditaments and premises as may by said commissioners be deemed to be benefited by the said improvement, and no others;

and having fixed such area and the amount of said bonds, and the interest thereon to be paid by assessment, it shall be the duty of the said commissioners to make a just and equitable assessment of the benefit to the respective owners, lessees, parties and persons respectively entitled unto or interested in the lands, tenements hereditaments and premises included within the said area or * assessment." Provision is then made for the confirmation of the report of the commissioners by the court, and it is provided that such report, when confirmed by said court, " shall be final and conclusive as well upon the said mayor, aldermen and commonalty of the city of New York, as upon the owners, lessees, persons or parties interested therein and entitled to the lands, tenements, hereditaments and premises mentioned in the said report, and also upon all other persons whomsoever." Section 17 provides that the said commissioners of assessment, at least thirty days before they present their report to the Supreme Court, shall deposit a true copy or transcript of the same in the office of the comptroller of the city of New York, and shall give daily notice, by advertisement in the newspapers mentioned in the 16th section of the act, for thirty days after depositing such report, as aforesaid, of the said deposit thereof in the said office, and of the day on which said report will be presented to the court; " and any person or persons whose rights may be affected thereby and who may object to the same or any part thereof, may, within thirty days after the first publication of such notice, set forth their objections to the same in writing to the said commissioners, who shall, after hearing the parties so objecting, thereupon reconsider their said assessment, or part or parts thereof so objected to, and in case the same shall appear to them to require correction, and not otherwise, they shall and may correct the same accordingly." Section 19 provides that the respective sums assessed by the commissioners upon the persons mentioned, in their said report and reported by them as and for the payment to be made by the parties and persons respectively in the said report mentioned or referred to shall be a lien or charge on the lands, tenements, hereditaments and premises in said report mentioned.

It thus appears that the only provision in the act which authorizes

---

\* So in the original.— [REP.

the owners of property to appear and object to the assessment is that in section 17, which permits such objection to be made after the report of the commissioners is filed with the comptroller. The act does not provide that the owners of property shall have notice of the proceeding before the commissioners; but the owners of property upon whom an assessment shall be imposed may have their day in court after the assessment is imposed and notice thereof is given by the filing of the report and the publication of notice thereof. Until the commissioners have determined to assess the cost of this improvement upon specific property, there is no one whose property is affected by the appointment, and consequently no one is aggrieved thereby. The objection that the act is unconstitutional, so far as it authorizes the imposition of any assessment upon specific property, can be taken only when an assessment is sought to be imposed. It would have been competent for the Legislature to provide that the assessment should be made by the public authorities of the city of New York, as in the case of an ordinary street improvement; and all that the owners of property upon whom an assessment should ultimately be imposed can ask is that they shall have their day in court to be heard upon their objections to the imposition of an assessment. The statute provides that the owners of property upon which an assessment has been imposed may present their objection to the assessment, but that is after the commissioners of assessment have reported, when for the first time the specific property upon which it is proposed to impose an assessment will be specified.

The objection to the constitutionality of the provisions authorizing an assessment upon specific property for this improvement presents serious questions. The act provides for an elevation of the track of the New York and Harlem Railroad Company or of its lessee, the New York Central and Hudson River Railroad Company. There is nothing in the act to show that this improvement was designed for the benefit of the public, the city at large or the owners of abutting property, and it is not clear that the Legislature has authority to provide that an expense incurred for the benefit of these railroad companies, in order to enable them to comply with the law of the United States which requires them to elevate their bridge across the Harlem river, can be imposed upon specific property under the guise of an assessment. But this objection can only

be taken when an assessment is imposed upon some specific prop
erty, and as no such assessment has yet been imposed, we think the
question is not presented upon this appeal.

It follows that the appeal should be dismissed, with ten dollars
costs and disbursements.

VAN BRUNT, P. J., PATTERSON, HATCH and LAUGHLIN, JJ.,
concurrred.

Appeal dismissed, with ten dollars costs and disbursements.